## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

**CITIZENS FOR RESPONSIBILITY** )
**AND ETHICS IN WASHINGTON,** )
455 Massachusetts Ave., N.W. )
Washington, D.C.  20001, )
 )
**NOAH BOOKBINDER** )
10206 Brookmoor Dr. )
Silver Spring, M.D.  20901, )
 )          Civil Action No.
     Plaintiffs )
 )
     v. )
 )
**FEDERAL ELECTION COMMISSION** )
999 E Street., N.W. )
Washington, D.C.  20463, )
 )
     Defendant. )
_____)

## COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

1.     Citizens for Responsibility and Ethics in Washington ("CREW") and Noah

Bookbinder (collectively, "Plaintiffs") bring this action for injunctive and declaratory relief

against the Federal Elections Commission ("FEC") under the Federal Election Campaign Act of

1971 ("FECA" or "the Act"), 52 U.S.C. § 30109(a)(8)(C), challenging as arbitrary, capricious,

an abuse of discretion, and contrary to law the dismissal by the FEC of an administrative

complaint by Plaintiffs against New Models for failing to comply with the disclosure

requirements the FECA imposes on "political committees." This action seeks to remedy the

injuries to Plaintiffs and the public caused by New Models' failure to disclose its contributors,

thereby denying Plaintiffs and the public information that the FECA entitles Plaintiffs and the

public to receive.

2.      The FEC's Office of General Counsel ("OGC") concluded that the FEC should

find reason to believe New Models violated the FECA by not registering and reporting as a

political committee in 2012 when it contributed over $3 million to separate political committees:

groups which "are, by definition, campaign related." *Buckley v. Valeo*, 424 U.S. 1, 79 (1976); *see*

First General Counsel's Report 5-8, MUR No. 6872 (May 21, 2015) (attached as Exhibit 1).

These contributions represented approximately 68.5% of New Models' 2012 spending. *Id.*

3.      The FEC, however, splitting 2-2, failed to adopt the OGC's recommendation for

the FEC to find reason to believe that New Models violated the FECA by not registering and

reporting as a political committee and dismissed the administrative complaint. *See* Certification,

MUR No. 6872 (Nov. 16, 2017) (attached as Exhibit 2).

4.      On December 20, 2017, over a month after closing the file on Plaintiffs'

complaint, the two commissioners who voted against adopting the OGC's recommendation

issued the required statement of reasons for their votes. Statement of Reasons of Vice Chair

Caroline C. Hunter and Comm'r Lee E. Goodman, MUR No. 6872 (Dec. 20, 2017) (attached as

Exhibit 3). According to their statement, the commissioners based their dismissal of the

complaint on two grounds. First, they found that New Models did not meet the statutory

thresholds to qualify as a political committee. Second, they relied on an interpretation of

*Buckley*'s "major purpose" requirement for political committee status that this District Court has

already found to be contrary to the law. *See* Memorandum Opinion, *CREW v. FEC*, 1:14-cv-

01419-CRC 22, 25–26, 209 F. Supp. 3d 77, 93–94 (D.D.C. Sept. 19, 2016) (attached as Exhibit

4).

5.      The two commissioners based their decision on impermissible interpretations of

the FECA at odds with statutory language and binding agency authority, and on an old,

discredited analysis.  As such, it is inherently flawed.  Accordingly, their failure to find even reason to believe that New Models was a political committee under the FECA and the consequent dismissal of Plaintiffs' complaint are contrary to law.

## JURISDICTION AND VENUE

6.     This Court has personal and subject matter jurisdiction over the parties pursuant to 52 U.S.C. § 30109(a)(8)(A) and 5 U.S.C. § 702. This Court also has jurisdiction pursuant to 28 U.S.C. § 1331, 2201(a), and 2202. Venue lies in this district under 52 U.S.C. § 30109(a)(8)(A) and 28 U.S.C. § 1391(e).

## PARTIES

7.     Plaintiff CREW is a non-profit, non-partisan corporation organized under section 501(c)(3) of the Internal Revenue Code.

8.     CREW is committed to protecting the rights of citizens to be informed about the activities of government officials, ensuring the integrity of government officials, protecting our political system against corruption, and reducing the influence of money in politics. CREW works to advance reforms in the areas of campaign finance, lobbying, ethics, and transparency. Further, CREW seeks to ensure that campaign finance laws are properly interpreted, enforced, and implemented.

9.     To advance its mission, CREW uses a combination of research, litigation, advocacy, and public education to disseminate information to the public about public officials and their actions, as well as the outside influences that have been brought to bear on those actions. A core part of this work is examining and exposing the special interests that have influenced our elections and elected officials and using that information to educate voters regarding the integrity of public officials, candidates for public office, the electoral process, and our system of government.

10.     Toward this end, CREW monitors the activities of those who run for federal office as well as those groups financially supporting candidates for office or advocating for or against their election. CREW regularly reviews campaign finance reports that groups, candidates, and political parties file with the FEC disclosing their expenditures and, in some cases, their contributors. Using the information in those reports, CREW, through its website, press releases, reports, and other methods of distribution, publicizes the role of these individuals and entities in the electoral process and the extent to which they have violated federal campaign finance laws.

11.     CREW also files complaints with the FEC when it discovers violations of the FECA. Publicizing violations of the FECA and filing complaints with the FEC serve CREW's mission of keeping the public, and voters in particular, informed about individuals and entities that violate campaign finance laws and deterring future violations of campaign finance laws.

12.     CREW is hindered in carrying out its core programmatic activities when those individuals and entities that attempt to influence elections and elected officials are able to keep their identities hidden. Likewise, the FEC's refusal to properly administer the campaign finance laws, particularly the FECA's reporting requirements, hinders CREW in its programmatic activity, as compliance with those reporting requirements often provides CREW with the only source of information about those individuals and groups funding the political process.

13.     As part of CREW's work in carrying out its central mission, CREW focuses on so-called "pay-to-play" schemes. Toward that end, CREW looks for correlations between donations to the campaign of a member of Congress or candidate and that member's subsequent congressional activities, including advocating for policies and legislation that serve the interests of the member's donors. Information that an individual or entity made a large-dollar contribution may be very revealing about the influences that donor has brought to bear on the member post-

election. Without information about the individuals and entities funding the political activities of organizations and individuals, CREW is stymied in fulfilling its central mission.

14.     As an example, in 2015, CREW issued a report, *Welcome to Washington: New Members of Congress Attract Special Interest Money* that analyzed fundraising by newly elected members of Congress in their first year in office. CREW's analysis was based on FEC campaign contribution records that identified contributions to those members from special interest PACs, including PACs tied to corporations, unions, and issues groups. From this data, CREW determined that new members of the House of Representatives embraced fundraising from special interests after they took office and became more reliant on that money than they had been as candidates. Those members raised nearly $17.3 million from special interest PACs in 2015, an increase of 15.8% over the amount they raised as candidates during the entire 2014 election cycle. CREW further found that special interest PAC money accounted for an average of 37.6% of total funds raised by the new members in 2015, more than double the 17.3% rate from the 2014 election cycle. CREW was able to obtain this information because of the disclosure requirements to which the organizations receiving those contributions – federal candidates, party committees, PACs, and super PACs – are subject under the FECA.

15.     As another example, on August 21, 2017, CREW published a blog post entitled *Synchronized Spending: The Dark Money Phantom's New Illusion*, which highlighted section 501(c)(4) dark money non-profits that fully fund multiple federal super PACs that attack or support the same candidates. By making the work of one group appear to be the work of two independent groups, this tactic misleads the public, exaggerates candidates' outside support, and exacerbates the problems caused by secret money in politics. CREW obtained the information used in this post from information the FECA requires political committees to disclose.

16.     CREW requires access to information detailing the true sources of the money used to fund the political activities of federal candidates and outside groups. As a result, CREW is harmed when the FEC fails to properly administer the FECA, particularly the statute's reporting requirements, thereby limiting CREW's ability to obtain and review campaign finance information.

17.     Plaintiff Noah Bookbinder is the executive director of CREW. He is a citizen of the United States and a registered voter and resident of the state of Maryland. As a registered voter, Mr. Bookbinder is entitled to receive all the information the FECA requires those engaged in political activities to report publicly. He is further entitled to the FEC's proper administration of the provisions of the FECA. Mr. Bookbinder is harmed in exercising his right to an informed vote when a political committee fails to report the true source of its contributions, as the FECA requires.

18.     Defendant FEC is the federal agency established by Congress to oversee the administration and civil enforcement of the FECA. *See* 52 U.S.C. §§ 30106, 30106(b)(1).

## STATUTORY AND REGULATORY FRAMEWORK

### *Registration and Reporting Requirement for Political Committees*

19.     The FECA defines the term "political committee" as "any committee, club, association, or other group of persons which receives contributions aggregating in excess of $1,000 during a calendar year or which makes expenditures aggregating in excess of $1,000 during a calendar year." 52 U.S.C. § 30101(4)(A); 11 C.F.R. § 100.5(a). Expenditures include "any . . . payment . . . , deposit, or gift of money or anything of value, made by any person for the purpose of influencing any election for federal office." 52 U.S.C. § 30101(9)(A)(i); 11 C.F.R. § 100.111.  In addition, the Supreme Court in *Buckley v. Valeo* carved out from this definition

organizations that, while meeting one of the statutory thresholds, are (1) not under the control of a candidate and (2) do not have a "major purpose" of "nominat[ing] or elect[ing] . . . candidate[s]." 424 U.S. at 79.

20.     All political committees must file a statement of organization within ten days after becoming a political committee within the meaning of 52 U.S.C. § 30101(4). 52 U.S.C. § 30103(a); 11 C.F.R. 102.1.

21.     All registered political committees are required to file periodic reports with the FEC that include, among other things, (1) identification of all individuals who contribute an aggregate of more than $200, (2) identification of all political committees that made a contribution to the political committee at issue, (3) detail of a political committee's debts and obligations, and (4) listing of all of a political committee's expenditures. 52 U.S.C. § 30104(b)(2)–(8); 11 C.F.R. § 104.3.

22.     Under the FECA, any person who believes there has been a violation of the Act may file a sworn complaint with the FEC. 52 U.S.C. § 30109(a)(1). Based on the complaint, the response from the person or entity alleged to have violated the Act, facts developed by the Office of General Counsel ("OGC"), and any OGC recommendation, the FEC then votes on whether there is "reason to believe" a violation of the FECA has occurred. 52 U.S.C. § 30109(a)(2). A "reason to believe" exists where a complaint "credibly alleges" a violation of the FECA "may have occurred." FEC, *Statement of Policy Regarding Commission Action in Matters at the Initial Stage in the Enforcement Process*, 72 Fed. Reg. 12545, 12545 (Mar. 16, 2007). If four commissioners find there is "reason to believe" a violation of the FECA has occurred, the FEC must notify the respondents of that finding and "shall make an investigation of such alleged violation." 52 U.S.C. § 30109(a)(2).

23.     If four commissioners fail to find reason to believe a violation of the FECA has

occurred and the Commission then dismisses the matter, the complainant, as a "party aggrieved"

by the dismissal, may seek judicial review of the failure to find reason to believe in the United

States District Court for the District of Columbia. 52 U.S.C. § 30109(a)(8)(A). All petitions from

the dismissal of a complaint by the FEC must be filed "within 60 days after the date of the

dismissal." 52 U.S.C. § 30109(a)(8)(B).

24.     The district court reviewing the FEC's dismissal of a complaint may declare the

FEC's actions "contrary to law." 52 U.S.C. § 30109(a)(8)(C). The court also may order the FEC

"to conform with such declaration within 30 days." *Id.* If the FEC fails to abide by the court's

order, the FECA provides the complainant with a private right of action, brought in the

complainant's own name, "to remedy the violation involved in the original complaint." *Id.*

## FACTUAL BACKGROUND

25.     On September 17, 2014, CREW and its then-executive director Melanie Sloan

filed an administrative complaint with the FEC against New Models, a tax-exempt group

organized under section 501(c)(4) of the Internal Revenue Code. The matter was given the MUR

number 6872. The complaint was subsequently amended to substitute plaintiff Noah Bookbinder

for Melanie Sloan.

26.     The complaint alleged that New Models failed to register and report as a political

committee from 2012 onward as required by the FECA and that New Models failed to report

receipt of contributions, its making of contributions, its debts, and its expenditures to the FEC as

required under the FECA.

27.     The complaint further alleged that New Models made numerous contributions to

various separate independent expenditure-only political committees ("super PACs") with the

purpose of influencing federal elections. These contributions totaled more than $3 million in

2012, constituting approximately 68.5% of New Models' expenditures in 2012. The super PACs that received the contributions from New Models were the Now or Never PAC, Government Integrity Fund Action Network ("GIFAN"), and Citizens for a Working America PAC ("CWA"). Now or Never PAC, GIFAN, and CWA reported receiving the funds from New Models as "contributions" within the meaning of the FECA, namely, gifts or other transfers of money made "for the purpose of influencing any election for Federal office." 52 U.S.C. § 30101(8)(A)(i). The administrative complaint requested that the FEC conduct an investigation into the allegations and declare that New Models violated the FECA and applicable FEC regulations.

28.     On November 5, 2014, New Models responded to Plaintiffs' complaint, admitting that it met the statutory threshold to qualify as a political committee. Nevertheless, New Models contested the allegation that it had the major purpose of nominating of electing candidates.

29.     On May 21, 2015, the FEC OGC issued its First General Counsel's Report in the New Models matter. Report, Ex. 1. In addition to the contributions alleged by Plaintiffs, the OGC identified three additional contributions:  one $5,000 contribution in 2012 to "Special Operations OPSEC Political committee" and two contributions in 2010 to CWA totaling $265,000.  OPSEC, like the other organizations to which New Models contributed, is an independent expenditure-only political committee. Based on these and the contributions Plaintiffs alleged, the OGC found New Models satisfied the statutory thresholds for political committee status and, by devoting at least 68.5% of its spending in 2012 to contributions to super PACs, New Models had a major purpose to nominate or elect candidates and thus was not excused from reporting by *Buckley***.** Accordingly, the OGC recommended that the FEC should find reason to believe that New Models violated the FECA by failing to register and report as a

political committee in 2012, that the FEC approve the OGC's factual and legal analysis, and that

the FEC approve compulsory process.

30.     Following the OGC's report, the FEC failed to act on Plaintiffs' administrative

complaint for over two years.

31.     Finally, on November 14, 2017, in a 2-2 vote, the FEC failed to adopt the OGC's

factual and legal analysis and thereby failed to find reason to believe that New Models violated

the FECA by failing to register and report as a political committee in 2012. Certification, MUR.

No. 6872 (Nov. 14, 2017) 1, Ex. 2. Accordingly, the same day, the commissioners voted to close

the file and dismiss the Plaintiffs' administrative complaint. *Id.*

32.     On December 20, 2017, two commissioners, Vice Chair Caroline C. Hunter and

Commissioner Lee E. Goodman, issued a Statement of Reasons setting out their basis for voting

against finding reason to believe that New Models violated the FECA by failing to register and

report as a political committee. Hunter, Goodman Statement of Reasons, Ex. 3. The two

commissioners asserted that New Models' actions did not qualify it as a political committee

based on their belief that New Models did not make expenditures over the statutory threshold

and that its major purpose was not related to the election of candidates, even in 2012, because it

did not devote a majority of its spending in other years to electioneering. *Id.* at 18-25, 31.

33.     On December 21, 2017, Commissioner Ellen L. Weintraub issued her own

Statement of Reasons. Statement of Reasons of Comm'r Ellen L. Weintraub, MUR 6872 (Dec.

21, 2017) (attached as Exhibit 5). Commissioner Weintraub points out that the major purpose

analysis used by Vice Chair Hunter and Commissioner Goodman was already considered and

rejected by this Court in *CREW v. FEC*, 209 F. Supp. 3d 77 (D.D.C. 2016). *Id.* at 1; *see also*

Mem. Op., Ex. 4. Commissioner Weintraub quoted Judge Christopher R. Cooper's memorandum

opinion in which he stated that in using a lifetime-spending-only approach, the Commission

failed to recognize that the major purpose of an organization may change with time.

Commissioner Weintraub commented that it was disappointing to see the other commissioners

cite the *CREW* case as support for their view, when in fact the *CREW* decision found the

lifetime-only approach contrary to law.

## PLAINTIFFS' CLAIM FOR RELIEF

### The FEC's Dismissal of Plaintiffs' Complaint Was Arbitrary, Capricious, an Abuse of Discretion, and Contrary to Law

34.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as fully

set forth herein.

35.     The FEC's dismissal of the complaint was arbitrary, capricious, an abuse of

discretion, and contrary to law in violation of 52 U.S.C. § 30109(a)(8)(C). The statement of

reasons of the controlling commissioners identified two alternative grounds for dismissal:

(1) that New Models did not satisfy either of the statutory thresholds, and (2) that New Models

did not a qualifying "major purpose" and therefore was excused from reporting under *Buckley*.

Both grounds are contrary to law.

36.     First, the controlling commissioners' conclusion that New Models did not satisfy

the statutory threshold under 52 U.S.C. § 30101(4) is arbitrary, capricious, an abuse of

discretion, and otherwise contrary to law. The interpretation from which that conclusion results,

adopted by only two commissioners of the FEC, that contributions to political committees used

to fund independent expenditures do not satisfy the FECA's $1,000 statutory expenditure or

contribution thresholds conflicts with binding authority and is thus impermissible.

37.     Second, the controlling commissioners' interpretation of *Buckley*'s major

purpose test is squarely at odds with judicial authority, including authority from this Court, and

thus is impermissible. The controlling commissioners found New Models lacked the requisite

major purpose because they compared the organization's political spending against its combined

spending from all the years of its decade-plus existence to find the group did not devote a

majority of its lifetime spending to electioneering (while ignoring that, for the first decade of its existence, any electioneering would have been illegal).  In *CREW v. FEC*, however, this Court ruled in an indistinguishable situation that "[t]he Commissioners' refusal to give any weight whatsoever to an organization's relative spending in the most recent calendar year" before the complaint was contrary to law. *CREW v. FEC*, 209 F.Supp.3d at 94-95. The controlling commissioners, just as before, refused to give any weight to New Models spending in 2012, failing to heed the directive of this Court.  Rather, they continue to apply a legally discredited and impermissible interpretation of *Buckley*'s "major purpose" standard when analyzing New Models' conduct. The dismissal resulting from that impermissible interpretation is therefore arbitrary, capricious, an abuse of discretion, and contrary to law.

38.     Therefore, Plaintiffs are entitled to relief in the form of a declaration that the FEC is in violation of its statutory responsibilities under 52 U.S.C. § 30109(a)(8) and has acted arbitrarily and capriciously, abused its discretion, and acted contrary to law in dismissing MUR 6872.

## **REQUESTED RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court:

1.     Declare that the FEC's dismissal of Plaintiffs' complaint against New Models was arbitrary, capricious, an abuse of discretion, and contrary to law.

2.     Order the FEC to conform to such declaration within 30 days pursuant to 52 U.S.C. § 30109(a)(8)(C).

3.     Award Plaintiffs their costs, expenses, and reasonable attorneys' fees in this action; and

4.     Grant such other and further relief as the Court may deem proper and just.

Respectfully submitted,

_/s/ Stuart McPhail_____
    Stuart C. McPhail
    (D.C. Bar No. 1032529#)
    smcphail@citizensforethics.org
    Adam J. Rappaport
    (D.C. Bar. No. 479866)
    Citizens for Responsibility and Ethics
      in Washington
    455 Massachusetts Ave., N.W.
    Washington, D.C. 20001
    Phone: (202) 408-5565
    Facsimile: (202) 588-5020

January 12, 2018
Attorneys for Plaintiffs